Etta B. SAUNDERS, Plaintiff–Appellee,

v.

William Graham CLAYTOR, Jr.,
Secretary of the Navy, et al.,
Defendants–Appellants.

No. 79–4373.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 14, 1980.

Decided Oct. 3, 1980.

Michael Jay Singer, Dept. of Justice, Washington, D.C., on brief; Al J. Daniel, Jr., Washington D.C., argued for defendants–appellants.

Howard Moore, Jr., Oakland, Cal., Charles Stephen Ralston, New York City, on brief; Charles Stephen Ralston, New York City, argued for plaintiff–appellee.

Before ANDERSON and ALARCON, Circuit Judges, and WILLIAMS, District Judge.*

DAVID W. WILLIAMS, District Judge:

This case presents the following questions on appeal, (1) whether the district court's award of a "cost of living inflation factor" adjustment in addition to a back pay award against the United States under Title VII is

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

barred by the doctrine of Sovereign immunity; and (2) whether the district court erred in awarding attorneys' fees for all work performed by plaintiff's counsel in two consolidated Title VII cases even though plaintiff prevailed in only one of them.

Plaintiff Etta Saunders, a Negro female, brought two employment discrimination suits against the Secretary of the Navy and others under Title VII, 42 U.S.C. §§ 2000e et seq. In the first action (CV 73–2241 WHO), she contested her removal from employment as a result of a reduction in force (RIF). In the second action (CV 74–1286 WHO), she challenged her denial of eligibility for the position of Equal Employment Opportunity Specialist.

Plaintiff was employed at the Naval Air Rework Facility as an Aircraft Metalsmith, a position she had obtained as a result of a determination by the Navy Department in 1968 that she had been denied promotion on the basis of sex discrimination. In March of 1973, plaintiff applied for the position of Equal Employment Opportunity (EEO) Specialist but was rated ineligible for that position. At approximately the same time, she was also told that because of a reduction in force of 108 positions, her employment as Aircraft Metalsmith would be terminated.

One of plaintiff's fellow employees filed an Administrative appeal on behalf of himself, plaintiff, and the other employees affected by the RIF. Plaintiff as an individual filed an EEO complaint with the Navy Department alleging that the RIF was based on race and sex discrimination against her. The Navy Department upheld the RIF, and plaintiff then filed a complaint against the Navy in district court under Title VII.

Plaintiff also filed an EEO complaint with the Navy alleging that her ineligibility rating for the EEO Specialist position was based on race and sex discrimination. The Navy Department upheld the rating. Plaintiff later filed a second complaint under Title VII challenging the Navy's denial of her application for the position.

The two cases were consolidated and tried together. The district court held that plaintiff had not demonstrated "that she was RIFed in retaliation for having opposed alleged discriminatory employment practices and/or having filed (in 1968) a complaint against the agency" or "that she was RIFed on the grounds of her sex (female) or her race." However, the court also held that plaintiff had proven "that she was rated ineligible for the position of EEO Specialist, GS–9, in retaliation for her opposition to unlawful employment practices and/or for having filed a complaint of unlawful (employment) discrimination against the agency" as well as "on the grounds of her sex."

On October 31, 1978, the court ordered that plaintiff be promoted to the position of EEO Specialist at the level of GS–11, the same level that she would most likely have attained had she been hired for that position on April 30, 1973. Plaintiff was awarded back pay of $92,955.92, which supposedly included amounts she would have received for promotions and appropriate step increases. Citing *Richerson v. Jones*, 551 F.2d 918, 925 (3d Cir. 1977), the court denied interest on the back pay award.

In addition to back pay, the court awarded a "cost of living inflation factor" adjustment amounting to $16,231.72 due through July of 1978. In its order the court stated that this award was necessary to assure compensation in "constant dollars" because calculation of plaintiff's back pay award would be based upon federal salary schedules in effect during prior years.

The court also awarded plaintiff $69,015 in attorneys' fees under 42 USC § 2000e–5(k) for all work performed by counsel on both cases. The Certificate of Counsel in Support of Request for Attorneys' Fees submitted by plaintiff's attorney did not contain a breakdown of how much time was spent on each case.

The Navy appealed from this judgment challenging only the inflation factor adjustment and the attorneys' fees award.

## INFLATION FACTOR AWARD

The district court should be reversed on its "cost of living inflation factor" adjustment. It is important first to identify precisely the nature of this award. The district court sought to make plaintiff whole by placing her in the same position she would have attained had she been hired as an EEO Specialist on April 30, 1973. According to the court's order of October 31, 1978, the court assumed entry into the Specialist position at the GS–7 level, promotion to GS–9 after one year, promotion to GS–11 after a second year, and appropriate step increases to the time of judgment. The calculation of back pay was based on salary schedules in effect during each of those years. The calculation included amounts for promotions, raises, and step increases, all of which presumably already reflected any cost of living adjustment. Over and above this back pay award, the court awarded an additional inflation factor adjustment, which it explained as "necessary to assure compensation in 'constant dollars' because calculation of plaintiff's back pay award (would) be based upon federal salary schedules in effect during prior years."

■ The doctrine of sovereign immunity dictates that the United States cannot be sued without its consent. The 1972 amendments to Title VII authorize the remedy of back pay for employees of the United States government who are victims of discrimination. See 42 U.S.C. § 2000e–5(g). Although many additional remedies, such as interest on back pay awards, vacation and sick pay adjustments are available to private employees, these remedies are not available to employees of the government because neither the 1972 amendments nor the incorporated provisions of Title VII expressly authorizes them. It is well settled case law that an award of interest on back pay is not available to government employees absent express statutory or contractual authorization. *United States v. Alcea Band of Tillamooks*, 341 U.S. 48, 49, 71 S.Ct. 552, 95 L.Ed. 738 (1951); *Fischer v. Adams*, 572 F.2d 406, 411 (1st Cir. 1978); *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977).

■ The inflation factor in this case is very similar to an award of interest in that both types of awards are meant to compensate the victim for the belated receipt of employment pay. The inflation factor adjustment is actually better compensation than an award of interest since the normal 7% interest award would not in these times make up for the double digit inflation. In essence, the inflation factor adjustment is a disguised interest award, which is not permitted under present law.

The cases of *Blake v. Califano,* 626 F.2d 891 (D.C.Cir. 1980) and *Chewning v. Schlesinger,* 471 F.Supp. 767, 777 (D.D.C. 1979), held that an inflation factor award added to a back pay award against the government was an indirect award of interest and therefore barred by the doctrine of sovereign immunity.

The case cited by the district court in support of its inflation factor award, *Lockheed Minority Solidarity Coalition v. Lockheed Missiles & Space Co.,* 406 F.Supp. 828, 834 (N.D.Cal.1976), is inapposite. It does not address the issue of an inflation factor adjustment but rather is a case on attorneys' fees against a private litigant, and it does not therefore involve the issue of sovereign immunity.

Appellee relies on a policy statement issued in 1977 by former Attorney General Griffin Bell to all United States Attorneys and agency general counsel. Appellee contends that this statement supports the general principle that Title VII cases against the United States are to be treated the same as private sector cases. Appellee also relies on the 1972 amendments to Title VII which gave broad new powers to the Civil Service Commission to provide whatever remedies or actions are needed to ensure equal employment opportunity in federal employment. 42 U.S.C. § 2000e–16(b). She argues that Congress intended to confer greatly enhanced rights on federal employees to obtain administrative and judicial relief against their federal employer and that the inclusion by courts of an inflation factor award among the available remedies would further that Congressional intent.

These arguments miss the mark. Neither the policy statement of the United States Attorney General nor the broad powers conferred on the Civil Service Commission amount to the express waiver of sovereign immunity necessary to justify an award of interest.

### ATTORNEYS' FEES

 We find that the trial court erred by awarding attorneys' fees for both the RIF and the EEO cases. It is undisputed that the plaintiff prevailed in but one of them. It is a stretch of Congressional intent to hold that there existed such an identity of issues in the two suits that plaintiff's attorneys research and work in each case should be compensated.

Since *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) courts no longer should apply historical equitable powers to justify a fee award in a so–called private attorney general case. Following *Alyeska*, Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988) and now such an award is the exercise of a statutory remedy.

Saunders had two separate pieces of litigation which were consolidated for trial purposes. She lost the RIF case. No issue raised in that case was sustained. She prevailed in the EEO case. This is the only case in which it is proper under the mandate of Congress to award a fee. The mere locking together of the two cases under a consolidation order does not turn a lost case into one in which the party may be said to have prevailed.

Appellees reliance on *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979) is misplaced. There it was held that the trial judge erred in cutting the award of fees because the plaintiffs had not prevailed on some issues or parts of issues in the case. *Northcross* was a single case and the appellate court correctly held it to be improper to cull out and refuse fee award for parts of the total issues raised, which were not persuasive in the reaching of the final decision. "So long as the party has prevailed on the case as a whole, the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith" (P. 636).

On remand the Court should consider only that portion of the claimed fees that relate to the EEO case and deny the remainder.

Reversed.